

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Scott Eric Luellen,<br>　　Movant,<br><br>v.<br><br>United States of America,<br>　　Respondent. | )<br>)<br>)<br>)　　1:08cr102 (LO)<br>)　　1:09cv681 (LO)<br>)<br>) |

## MEMORANDUM OPINION

Scott Eric Luellen, a federal inmate proceeding pro se, has filed a Motion to Vacate, Set Aside, or Correct a Sentence, pursuant to 28 U.S.C. § 2255, challenging the sentence imposed after he pleaded guilty on May 13, 2008 to engaging in a monetary transaction with money from unlawful activity, in violation of 18 U.S.C. § 1957. On August 18, 2008, Luellen was sentenced to serve 84 months incarceration, followed by 36 months supervised release, and to pay restitution in the amount of $1,699,872.00. Luellen's motion for § 2255 relief from the sentence was filed on June 17, 2009, accompanied by a motion to proceed in forma pauperis. By Order entered June 19, 2009, Luellen's petition was filed in forma pauperis, and the United States was ordered to respond to his claims within twenty-three (23) days. On June 29, 2009, Luellen filed the first of several motions for leave to amend his petition, along with the proposed amendment, and the United States was directed to respond to that request within an additional twenty-three (23) days. The United States filed its response to the Motion to Vacate and the June 29 Motion for Leave to Amend on August 12, 2009, and the Motion for Leave to Amend has been granted. For the reasons which follow, the motion to vacate will be denied.

1

## I. Background

By Information filed on May 13, 2008, Luellen was charged by information with engaging in a scheme and artifice to defraud investors by making material false representations concerning a real estate development and using the proceeds for his personal gain. Dkt. 2. On that same date, Luellen waived indictment and pleaded guilty to the information. Dkt. 3 - 5. The plea agreement specified that the Court had jurisdiction and authority to impose any sentence within the statutory maximum, which was stipulated to be a maximum term of ten years imprisonment, a fine of $250,000, full restitution, special assessment, and three years of supervised release, but that the Court would determine the actual sentence in accordance with 18 U.S.C. § 3553(a). Dkt. 4, ¶¶ 1, 4. On August 29, 2008, this Court sentenced Luellen to serve 84 months incarceration, a term within the calculated sentencing guidelines range of 78 - 97 months, followed by 36 months supervised release. In addition, Luellen was ordered to pay restitution to his victims in the amount of $1,699,872.00. Dkt. 19. In the instant motion to vacate, Luellen claims that the sentence was the product of two instances of prosecutorial misconduct and several instances of ineffective assistance by defense counsel Michael S. Nachmanoff, Esquire. The Court finds that all of these arguments are without merit.

## II. Analysis

### A. Prosecutorial Misconduct

In support of his position that his sentence resulted from prosecutorial misconduct, Luellen first argues that his right to due process was violated when the government failed to disclose exculpatory evidence, as required by Brady v. Maryland, 373 U.S. 83 (1987). Dkt. 25, ECF 50 - 52. In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. Thus, to establish a successful Brady claim, a defendant must show that (1) material evidence was suppressed by the government (2) that was favorable to the defense and (3) that the defense was prejudiced as a result. Id. It is settled in this circuit that Brady applies to evidence which is material to sentencing. Basden v. Lee, 290 F.3d 602, 611 (4th Cir. 2002).

In this case, Luellen's Brady claim fails because he does not make a credible threshold showing that the government suppressed evidence. Instead, Luellen's allegations are merely speculative: for instance, he alleges that "to the best of his knowledge and belief .... the government made no effort to comply with Brady," and that "it was probable either the agent or the prosecutor had mitigating information." Dkt. 25, ECF 51. To support this theory, Luellen offers two examples of what he characterizes as Brady violations. First, Luellen asserts that it was "likely" that an engineer was interviewed by the government, and that it is a "logical supposition" that the government was not pleased with this opinion, and then as a result it likely withheld the interview notes from the defense. Dkt. 25, ECF 51. Luellen does not provide the name of the engineer he supposes the government interviewed, nor does he specify the helpful information he believes the unnamed engineer would have provided. Conjecture such as this falls far short of making out an actionable Brady claim. See United States v. Crowell, 586 F.2d 1020, 1029 (4th Cir. 1978), cert.denied, 440 U.S. 959 (1979) (mere speculation is not adequate to establish that material was exculpatory under Brady).

In his second example of a supposed Brady violation, Luellen states that "the prosecutor should have gone looking for [evidence Luellen believes would have been exculpatory] and provided it to the defense voluntarily." Pet. at 51. In this, movant is simply mistaken. While the government is required under Brady to disclose mitigating or exculpatory evidence, it is not required to proactively

3

seek out such evidence. United States v. Perdomo, 929 F.2d 967, 971 (3d Cir. 1991). Thus, neither of the instances of governmental misconduct Luellen alleges suffices to state a Brady violation, and his first claim of prosecutorial misconduct thus fails.

In his second allegation of prosecutorial misconduct, Luellen contends that the government breached the plea agreement three times at sentencing by arguing for enhancements outside the plea agreement. Again, this assertion is based on a misunderstanding. The government in this case sought enhancements for obstruction of justice, abuse of trust, and sophisticated means, and argued for an upward departure and against Luellen's receipt of credit for acceptance of responsibility. As will be discussed more thoroughly infra, the plea agreement contained no restrictions with regard to any of these enhancements, and the government does not breach a plea agreement by arguing for enhancements which are not specifically mentioned. United States v. Cudjoe, 534 F.3d 1349, 1354 (10th Cir. 2008). Moreover, in this case, the plea agreement expressly provided that "[t]he United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence." Plea Agreement, Dkt. 4 at ¶ 4. Under these circumstances, the government's advocacy of enhancements and an upward departure at sentencing did not constitute a breach of the plea agreement, and movant's claim of prosecutorial misconduct as a whole must be rejected.[1]

### B. Ineffective Assistance of Counsel

Luellen's motion to vacate also includes claims of ineffective assistance of counsel.

---

[1]Subsequent to the filing of his § 2255 motion, Luellen moved for leave to supplement his aargument on prosecutorial misconduct with case authority that purports to demonstrate that the prosecutor in this case has a "multi-case history of suppressing and misrepresenting evidence." Dkt. 67. Because there is no indication that prosecutorial misconduct occurred in the case at bar, Luellen's argument is irrelevant.

Specifically, Luellen contends that his lawyer, Mr. Nachmanoff, rendered ineffective assistance by (1) failing to investigate or introduce mitigating evidence at sentencing, (2) failing to challenge the government's breach of the plea agreement and the Court's lack of subject matter jurisdiction at sentencing, and (3) permitting the Court and the government to rely on an incorrect guiding statute to determine his sentence and failing to cite allegedly favorable case authority at sentencing. None of these positions is persuasive.

### 1. Applicable Law

To establish ineffective assistance, a movant must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a movant must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005).

The burden is on the movant to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a movant fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

### 2. Failure to Investigate and Present Mitigating Evidence

In his first allegation of ineffective assistance, Luellen contends that ""[c]ounsel was reticent to present mitigating evidence, in part, because he perceived the Court mostly wanted to hear a contrite or apologetic defendant and that the Court often or easily mistook mitigating evidence as excuses...." Dkt. 25, ECF 46. Luellen argues that counsel should have presented mitigating evidence at sentencing through witness testimony and by requesting that the government produce exculpatory evidence as required by Brady. Dkt. 25, ECF 48. However, movant's argument in this regard is fundamentally flawed, because he has presented no facts to show that mitigating or exculpatory evidence existed. The sole specific instance to which Luellen points to support his claim is the assertion that counsel was told prior to sentencing that one or two witnesses existed who "may refute or minimize claims" relating to the victims' familiarity with high-risk investments, but did not try to locate "him." Id., ¶ 24 (c). However, defense counsel Mr. Nachmanoff has supplied an affidavit in which he attests as follows:

> With respect to the allegation that defense counsel 'was reticent to

> present mitigation evidence,' we spent many hours investigating potential mitigating factors and gathering information from a number of sources to address the sentencing factors listed at 18 U.S.C. § 3553(a) in the most favorable light possible for Mr. Luellen. ... We collected (with Mr. Luellen's assistance) letters from his family, colleagues, and friends to aid in sentencing. Those letters were filed as exhibits with the sentencing memorandum and cited throughout the memorandum. We interviewed both of Mr. Luellen's siblings (John and Mark) in an effort to provide the Court with mitigating information about Mr. Luellen's personal history and his family's background. We worked closely with Mr. Luellen in connection with his statement of acceptance of responsibility for the Presentence Report ("PSR") and his allocution for the sentencing hearing. We also retained and consulted with two forensic experts to explore other issues of mitigation, which were not ultimately presented to the Court.
>
> With respect to the allegations in ¶ 24(c) and (e) of the Motion to Vacate ... defense counsel did, in fact, make efforts to interview witnesses, including the witnesses that Mr. Luellen believed would be able to 'refute or minimize' Presentia's claims. Defense counsel interviewed two former town officials that had been identified by Mr. Luellen. Neither individual, however, could provide testimony that would have aided Mr. Luellen at sentencing. These interviews and other efforts made by defense counsel regarding statements made by victims and witnesses at sentencing were discussed with Mr. Luellen on a number of occasions leading up to the sentencing hearing. During these discussions, we advised Mr. Luellen that focusing on the victims' wealth and/or experience with high-risk investing would not effectively mitigate the fact that these investors had suffered serious financial losses. Instead, we concluded that such arguments would more likely undermine efforts to present compelling mitigation evidence at sentencing about Mr. Luellen's remorse and his low likelihood of recidivism.

Nachmanoff Aff. ¶¶ 8 - 9.

The Court credits Mr. Nachmanoff's statements that he took many steps to gather and to present as much mitigating evidence at sentencing as possible, including interviewing the two witnesses to whom movant points as being potentially beneficial. It is well established in federal jurisprudence that "'strategic choices made [by counsel] after thorough investigation . . . are virtually

unchallengeable...."' Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. In particular, decisions concerning the calling of witnesses are matters of strategy left to the attorney, and ordinarily cannot constitute ineffective assistance. Jones v. North Carolina, 547 F.2d 808 (4th Cir. 1977). In this case, it is apparent that counsel's decision not to call the two witnesses to whom movant refers to testify at sentencing was a sound tactical choice that cannot support a claim of ineffective assistance. Goodson v. United States, 564 F.2d 1071 (4th Cir. 1977).

Luellen also argues that his victims' wealth and financial sophistication were mitigating factors, and that had counsel argued at sentencing that the victims exaggerated their losses with misleading representations and pointed out that "most investors lived in and continue to live in homes worth more than $1 million ..." (Pet. at 13), he would have received a downward departure. The Court rejects this contention. According to Mr. Nachmanoff's statement, he believed that presenting an argument that turned the blame back on the victims would contradict his portrayal of Luellen as remorseful for his actions and unlikely of recidivism, and would undermine counsel's efforts to attain a sentence reduction for acceptance of responsibility. To bolster his position, counsel retained two forensic experts to explore issues of mitigation, and interviewed Luellen's friends, family members and colleagues in search of mitigating information. Indeed, the letters counsel gathered were filed as exhibits with the sentencing memorandum, and were cited throughout that document. Dkt. 10. Counsel met with the movant on several occasion prior to sentencing to discuss these issues, and advised Luellen at that time that it would not be helpful to their case to seek and present evidence that the victims were wealthy and experienced investors, since it did not alter the fact that they had suffered serious financial losses. Nachmanoff Aff. at 4.

"Counsel is not ineffective merely because he overlooks one strategy while diligently pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987). In this case, it is apparent that defense counsel diligently pursued a sound sentencing strategy of portraying movant as remorseful for his actions and unlikely to repeat his offenses in the future. The fact that counsel elected not to simultaneously present what would have amounted to the contradictory argument that movant's victims were partially to blame for their own losses was a strategic decision that did not constitute ineffective assistance.

Luellen next asserts that counsel provided ineffective representation by failing to present evidence that an adverse witness, John Rollins, should have been impeached during the second sentencing hearing. As to this allegation, Mr. Nachmanoff attests as follows:

> In ¶ 24(e), Mr. Luellen asserts that defense counsel failed to present 'evidence [John] Rollins committed perjury and lied to a federal agent.' During the sentencing hearing held on August 7, 2008, we objected to Mr. Rollins' testimony on the basis that he was not a victim under the Crime Victims' Rights Act ('CVRA') and did not have a connection to the money laundering offense to which Mr. Luellen had pleaded guilty. The Court agreed that Mr. Rollins was not a victim under the CVRA, but nonetheless permitted his testimony in connection with sentencing. Through cross-examination, we established that Mr. Rollins was not a witness to the money laundering offense. We concluded that further pursuit of Mr. Rollins at the subsequent sentencing hearing, at which he did not testify, would be counter-productive.

Nachmanoff Aff. ¶10. Again, defense counsel's strategic decision not to present the testimony of an individual who was not a witness to the money laundering offense at the second sentencing hearing was a sound tactical choice that does not support movant's allegation of ineffective assistance. Gray, 529 F.3d at 229.

Luellen next points to counsel's alleged failure to request Brady material as an instance of

constitutionally deficient performance. As to this allegation, Mr. Nachmanoff explains that counsel for the government advised him that it had provided access to all discovery materials in its possession during a meeting that was held to review discovery on April 23, 2008. Nachmanoff Aff. ¶ 12. Consequently, Luellen's claim is meritless, as defense counsel fully satisfied his obligation under Brady.

Under all of the foregoing circumstances, the Court finds that movant's argument that counsel failed to present mitigating evidence at sentencing satisfies neither the performance nor the prejudice prong of Strickland. Accordingly, ineffective assistance in that regard has not been shown, and movant is entitled to no relief on that claim.

### 3. Failure to Object to Government's Breach of Plea Agreement and Court's Lack of Subject Matter Jurisdiction

In his second claim of ineffective assistance of counsel, Luellen argues that his counsel failed to object to the government's breach of the plea agreement and the Court's lack of subject matter jurisdiction to add an enhancement for obstruction of justice. Neither of these contentions has merit.

As to movant's allegation that the government's breach of the plea agreement went uncontested, Mr. Nachmanoff attests as follows:

> With respect to the allegation that the government breached the plea agreement at ¶ 24(b) ..., we concluded that there was no basis to raise this argument. At sentencing, the government argued that the following sentencing enhancements applied to the advisory guideline calculation: obstruction of justice, sophisticated means, and abuse of trust. The government also argued that Mr. Luellen should not receive credit for acceptance of responsibility, and it sought an upward departure. The plea agreement was silent with regard to all of these enhancements and did not restrict the government from seeking these enhancements or an upward departure. The government did agree in the plea agreement that it would move for an additional one-level decrease in the offense for not having to prepare for trial, but that

10

> promise was conditioned upon the government's agreement that Mr. Luellen 'qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a)' for acceptance of responsibility. Plea Agreement, ¶ 4(D). Although we did not see a basis for arguing that the plea agreement had been violated, we vigorously opposed the suggested enhancements and the proposed denial of acceptance of responsibility credit based on legal and factual grounds. We researched and drafted arguments opposing the government's arguments in both the sentencing memo and reply memorandums filed with the Court, and argued for a sentence based upon an advisory guideline range of 41 to 51 months. We further sought a below-guidelines sentence of 18 months of imprisonment to be followed by 12 months of community or home confinement.

Nachmanoff Aff. § 11.

As stated in the foregoing affidavit, the plea agreement did not restrict the government's ability to seek enhancements and an upward departure at sentencing. Specifically, the plea agreement stated in pertinent part:

> The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court will determine the defendant's actual sentence in accordance with 18 U.S.C. § 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court, Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), the Court, after considering that factors set forth in 18 U.S.C. § 3553(a), may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness. The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.

Plea Agreement, Dkt. 4 at ¶ 4.

Under these circumstances, counsel did not provide ineffective assistance by failing to object to the government's breach of the plea agreement, because no such breach occurred. When the government sought enhancements for abuse of trust, sophisticated means and obstruction of justice to be applied to the advisory guideline calculation, as it was free to do under the terms of the plea agreement, defense counsel vigorously argued against such enhancements both in the sentencing and reply memoranda filed with the Court, as well as orally at the sentencing hearing. Counsel also opposed the denial of responsibility credit and the upward departure sought by the government, and sought a guideline range of 41 to 51 months and a below-guideline sentence of 18 months imprisonment followed by 12 months of community or home confinement. The fact that these arguments did not prevail does not indicate that counsel's efforts on Luellen's behalf were less than thorough and professionally competent. Nor did counsel render constitutionally deficient performance by omitting the argument that the Court did not have subject matter jurisdiction over the enhancements, because it is the statutory duty of a sentencing court to calculate the advisory guideline range and impose a sentence, while considering the sentencing range and the applicable category of the offense committed. See 18 U.S.C. § 3553(a)(4)(A). Luellen's allegations regarding counsel's failure to challenge the government's breach of the plea agreement and the Court's lack of subject matter jurisdiction at sentencing thus fail to satisfy both the performance and the prejudice prong of the Strickland analysis, and hence warrant no relief.

### 4. Reliance on Erroneous Sentencing Guideline

In his final claim of ineffective assistance, movant argues that his attorney erroneously permitted the Court and the government to use United States Sentencing Guideline (U.S.S.G.) § 2B1.1 rather than U.S.S.G. § 2S1.1 as the guiding statute in determining his sentence. However,

Luellen's claim is without merit for the following reasons.

Luellen has incorrectly interpreted the United States Sentencing Guidelines by concluding that his offense level should be based only on § 2S1.1, rather than as an enhancement to § 2B1.1. In cases such as this one, where the defendant committed the underlying offense, U.S.S.G. § 2S1.1(a)1 provides that the base offense level is "[t]he offense level for the underlying offense from which the laundered funds were derived." The underlying offense in this case was wire fraud, which is calculated under U.S.S.G. § 2B1.1 as having a base offense level of 6. Further, U.S.S.G. § 2S1.1(b)(2)(A) states that "[i]f the defendant was convicted under 18 U.S.C. § 1957, increase by 1 level." Thus, contrary to movant's argument, is clear that U.S.S.G. § 2S1.1 is meant to serve as a one-point enhancement rather than a base level for a conviction under 18 U.S.C. § 1957. Luellen's offense level accordingly was properly calculated under U.S.S.G. § 2B1.1 with the one-point enhancement pursuant to U.S.S.G. § 2S1.1(b)(2)(A), and no error was committed by defense counsel, the government or the Court when Luellen's sentence was imposed accordingly.

Luellen also charges counsel with providing ineffective assistance in failing to argue that the sentence was unlawful under United States v. Santos, 553 U.S. 507 (2008). Santos was decided on June 2, 2008, after the plea agreement was entered on May 13, 2008 but prior to sentencing on August 29, 2008. Luellen contends in the § 2255 motion itself and again in the amendment of June 29, 2009 (Dkt. 32) that Santos was favorable to his case and that counsel should have relied on its authority to argue for a reduced offense level at sentencing. However, Santos is distinguishable from Luellen's situation and would not have provided the support he now supposes.

In Santos, a defendant pleaded guilty to conspiracy to launder money, in violation of 18 U.S.C. § 1956. The Court held that the rule of lenity compelled the conclusion that the term "proceeds" used

13

in the money laundering statute, § 1956(a)(1)(A)(i), refers to profits gained from the money laundering offense. In Luellen's case, on the other hand, his underlying offense was engaging in monetary transactions with money from unlawful activity, and § 2S1.1(a)(1) cross references § 2B1.1, the applicable guideline to calculate the victims' loss for the underlying offense, and not the proceeds or profits that the defendant received. Under § 2B1.1(b)(1), the focus is solely on loss to the victim, so how Luellen used the funds he unlawfully received is irrelevant. Thus, Luellen's contention that counsel provided ineffective assistance by failing to rely on Santos at sentencing satisfies neither prong of the Strickland analysis, and must be rejected.[2]

### III. No Hearing is Necessary

Included within Luellen's motion is a request for an evidentiary hearing on his claims for § 2255 relief. "A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle [that person] to relief." United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293, 312 (1963)). No hearing is required in this case because the record before the Court along with the Court's knowledge of the case are sufficient to dispose of movant's allegations. Sanders v. United States, 373 U.S. 1, 8 (1963). Accordingly, the request for an evidentiary hearing will be denied.

---

[2]Subsequent to the filing of his § 2255 motion, Luellen moved for and was granted leave to supplement his argument regarding Santos and its applicability to his case with additional case authorities and articles. See Dkt. 60, 62, 70, 75. The Court has considered these additional materials and does not find that they alter the conclusion that counsel's failure to cite Santos at sentencing in this case did not constitute ineffective assistance.

## IV. Conclusion

For the foregoing reasons, the Motion to Vacate, Set Aside, or Correct a Sentence, pursuant to 28 U.S.C. § 2255, will be denied. An appropriate Order will issue.

Entered this 23rd day of September 2011.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge